IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

ERNA V. CRUSE                                                              PLAINTIFF

v.                      CIVIL NO.       10-2056

MICHAEL J. ASTRUE, Commissioner
of Social Security Administration                                  DEFENDANT

**MEMORANDUM OPINION**

Plaintiff brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability and disability insurance benefits (DIB) under Title II of the Social Security Act (Act), 42 U.S.C. § 423(d)(1)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.**       **Procedural Background:**

Plaintiff filed for a period of disability and disability insurance benefits on July 17, 2007 (T. 84). The application was denied initially and on reconsideration and Plaintiff requested a hearing on January 15, 2008 (Tr. 47, 52, 56). A hearing was held on January 23, 2009 in Fort Smith, Arkansas before Administrative law judge (ALJ) Larry Shepherd (Tr. 9-33). On July 31, 2009, the ALJ issued a decision finding Plaintiff not disabled (Tr. 36-46). On March 17, 2010, the Appeals Council found no basis to reverse the ALJ's decision (Tr. 1). Therefore, the ALJ's July 31, 2009, decision became the Commissioner's final administrative decision.

The ALJ found Plaintiff retained the residual functional capacity (RFC) to perform a range of light work activity with some mental limitations (Tr. 42-45). Specifically, the ALJ found Plaintiff could perform work where interpersonal contact is incidental to the work performed with work-related tasks limited to unskilled work (Tr. 42-45). Relying on the testimony of a Vocational Expert, (VE) the ALJ found Plaintiff not disabled because she retained the capacity to perform all three of her past relevant work positions at step four of the sequential evaluation.

## II.     Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id*. "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one

year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

      The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III.    Applicable Facts

      Between November 30, 2006 and May 31, 2007 the Plaintiff treated with Sparks Preferred Medical Care. (T. 166-173). On May 31, 2007 Dr. Russell diagnosed the Plaintiff with Anxiety because her job was being eliminated and he prescribed Cymbalta 30 mg and Xanax .05 mg. (T. 166).

On July 17, 2007 the Plaintiff filed her application for SIB claiming an onset date of April 18, 2007. (T. 84). On her Disability Report she listed "Hbp, rheumatoid arthritis/anxiety attacks/eyesight/migraine" as the basis for her disability. T. 110.

On August 16, 2007 the Plaintiff was seen by Kathleen Kralik, Ph. D. for a Mental Diagnostic Evaluation. (T. 180-187). Dr. Kralik diagnosed the Plaintiff with Pain disorder associated with both psychological factors and a general medical condition, major depression, single episode, moderate severity; without psychosis an adjustment disorder NOS and a Cognitive disorder NOS. She estimated her current GAF at 55-65. (T. 185).

On October 24, 2007 the Plaintiff was seen by Dr. N. Van Hoang, M.D. who diagnosed her with Rheumatoid Authorities, Anxiety Disorder and Hypertension. (T. 194). He noted that her grip strength was 80% of normal but her other limb functions were normal. (T. 192). Her range of motion was normal for all extremities and spine. (T. 191). He felt that she had mile to moderate limitations for gainful employment. (T. 194).

On November 1, 2007 a Consultive Exam was performed by Dr. Steve Owens (T. 195-202) who determined that the Plaintiff could occasionally lift 50 pounds and frequently lift 25 pounds. She could stand or walk for 6 hours in an 8 hour day and sit for 6 hours in an 8 hour day. He found her ability to push/pull to be unlimited. T. 196.

On November 20, 2007 an additional Mental Diagnostic Evaluation was performed by Patricia J. Walz, Ph.D. who diagnosed the Plaintiff with Major Depression and a Probable learning Disorder in Arithmetic and placed her GAF at 45-50. (T. 210).

On November 30, 2007 a Psychiatric Review Technique was completed by Dr. J. Rankin who determined the Plaintiff to be suffering from Anxiety (T. 219) and that she was Mildly

impaired in her Activities of Daily Living, Moderately impaired in Maintaining Social Functioning and Maintaining Concentration, Persistence, and Pace and had No episodes of Decompensation. (T. 224). Dr. Rankin's findings were reviewed and affirmed by Dr. Jerry Henderson on December 19, 2007. (T. 234).

IV.     **Discussion**:

**RFC:**

The ALJ found Plaintiff retained the residual functional capacity (RFC) to perform a range of light work activity with some mental limitations (Tr. 42-45). Specifically, the ALJ found Plaintiff could perform work where interpersonal contact is incidental to the work performed with work-related tasks limited to unskilled work (Tr. 42-45).

The ALJ found that "with regard to the claimant's residual functional capacity and the physical and mental demands of the jobs listed above, the undersigned finds that the claimant is capable of performing past relevant work as a poultry worker (DOT 525.687-078), appliance assembler (DOT 827.684-010) and electrical assembler (DOT 729.687-010) as actually and generally performed." (T. 45).

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. *Id*. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual

functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003)

**A. Physical Limitations:**

The Plaintiff alleged in her application for disability that her physical limitations were high blood pressure, eyesight, migraines and rheumatoid arthritis. (T. 110).

(1) High Blood Pressure

The Plaintiff's reported blood pressure was 124/86 on November 3, 2006 (T. 171), 100/80 on January 10, 2007 (T. 170) and 108/76 on February 19, 2007. The Plaintiff did represent to Dr. Kralik on August 16, 2007 that she took Lotrel for high blood pressure. (T. 181). If the Plaintiff was taking Lotrel in 2006 and 2007 it appears to have been working. Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits. *See, e.g., Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir.2004); *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir.1987); see also *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir.1983) (affirming a denial of benefits and noting that the claimant's impairments were responsive to medication). *Warre v. Commissioner of Social Sec. Admin.* 439 F.3d 1001, 1006 (C.A.9 (Or.),2006)

(2) Eyesight

Plaintiff testified that she had no difficulty seeing when using her eyeglasses (Tr. 16). Conditions that are controlled by treatment or medication are not considered disabling. *Raney v. Barnhart,* 396 F.3d 1007, 1010 (8 th Cir. 2005). The only side effect ever alleged was from

Xanax. Plaintiff reported that after an initial short reaction, the side effects subsided (Tr. 114).

There are no medical records indicating that the Plaintiff's eyesight is significantly impaired or that any impairment is not corrected by appropriated glasses. It does appear that the ALJ attempted to obtain records from the Wal-Mart Vision Center (T. 175) but no records are reflected in the record.

(3) Migraines

The Plaintiff did complain of migraines to Dr. Russell on May 31, 2007. The Plaintiff acknowledged that she had been laid off from her work and then was unable to return because of anxiety. The Plaintiff stated that her job was going to be eliminated because of downsizing. Dr. Russell prescribed Cymbalta and Xanax. (T. 166). Dr. Russell stated that he had seen the Plaintiff only once for headaches in the past 24 months and had not been seen since the May 31, 2007 exam. (T. 179). In general, the failure to obtain follow-up treatment indicates that a person's condition may not be disabling or may not be as serious as alleged. *See Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir.1995) (holding "[g]iven his alleged pain, Shannon's failure to seek medical treatment may be inconsistent with a finding of disability".

(4) Rheumatoid Arthritis

The Plaintiff reported to Dr. N. Van Hoang, M.D. on October 24, 2007 that she "had a history of rheumatoid arthritis diagnosed over a year ago. (T. 188). There is nothing in the record that supports this diagnosis. Dr. Hoang however did diagnoses the Plaintiff with rheumatoid arthritis, anxiety disorder and hypertension. (T. 194). Dr. Hoang noted that all of her extremities were normal (T. 191) and that her limb functions were normal except that her grip was 80% of normal. (T. 192). Dr. Hoang felt that the Plaintiff had mild to moderate physical limitations.

On May 31, 2007 the Plaintiff's treating physician, Dr. Russell, did not place any restrictions on the Plaintiff and recommended to the Plaintiff that "she start looking for another job since she knows this one (Whirlpool) is going to play out in a month." (T. 166). A treating physician's medical opinion is given controlling weight if that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). These opinions are not automatically controlling, however, because the record must be evaluated as a whole. *Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir.2005). Instead of looking for another job the Plaintiff filed for disability in July 2007. Also a lack of functional restrictions on the claimant's activities is inconsistent with a disability claim where, as here, the claimant's treating physician is recommending that she return to work.. *See Hensley v. Barnhart*, 352 F.3d 353, 357 (8th Cir.2003).

Dr. Steve Owens performed a Physical Residual Functional Capacity Assessment on November 1, 2007 and found that the Plaintiff could occasionally lift 50 pounds and frequently lift 25 pounds. She could stand or walk for 6 hours in an 8 hour day and sit for 6 hours in an 8 hour day. He found her ability to push/pull to be unlimited. T. 196. Generally a consultive examination will not constitute substantial evidence of a Plaintiff's RFC. *See Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999) (holding that the opinion of a consulting physician who examined the plaintiff once or not at all does not generally constitute substantial evidence). Here, however, you have a total absence of any history on the part of the Plaintiff seeking medical treatment for any of her alleged disabilities and her treating physician who was of the opinion, just 2 months before the Plaintiff applied for disability, that she was able to work.

**B.  Mental Limitations**

The Plaintiff also claimed that she was disabled because of anxiety attacks. (T. 110).  She told Dr. Russell, on May 31, 2007 that she had been temporarily laid off and was called back to work and when she was driving to work she got anxious, and as she was walking from the parking lot to work her "chest started pounding, she got short of breath, nauseated, her head started hurting, and she had to turn around and go back home."  She claimed the same thing happened the next day.  Dr. Russell diagnosed the Plaintiff with Anxiety because her job was being eliminated and he prescribed Cymbalta 30 mg and Xanax .05 mg. (T. 166).  Dr. Russell did not see the Plaintiff after May 31, 2007 and there is no evidence that the Plaintiff sought any treatment after her visit with Dr. Russell on May 31, 2007.  In general, the failure to obtain follow-up treatment indicates that a person's condition may not be disabling or may not be as serious as alleged. *See Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir.1995) (holding "[g]iven his alleged pain, Shannon's failure to seek medical treatment may be inconsistent with a finding of disability"),

The ALJ has a duty to fully and fairly develop the record.  *See Frankl v. Shalala*, 47 F.3d 935, 938 (8th Cir. 1995)(ALJ must fully and fairly develop the record so that a just determination of disability may be made). The ALJ is not required to act as Plaintiff's counsel. *See Clark v. Shalala*, 28 F.3d 828, 830 (8th Cir. 1994) (ALJ not required to function as claimant's substitute counsel, but only to develop a reasonably complete record); *see also Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir. 1995) ("reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial").  In this effort the ALJ had a Mental Diagnostic Evaluation performed by Dr. Kathleen Kralik, Ph. D.

During the evaluation with Dr. Kralik the Plaintiff contended that the reason for her inability to work was because of her rheumatoid arthritis. (T. 180). Dr. Kralik noted significant cognitive issues including slow processing, difficulty comprehending instructions, retrieval and word finding difficulty, and difficulty sustaining focus despite an apparent good effort (Tr. 180). Dr. Kralik diagnosed the Plaintiff with Pain disorder associated with both psychological factors and a general medical condition, major depression, single episode, moderate severity; without psychosis an adjustment disorder NOS and a Cognitive disorder NOS.  She estimated her current GAF at 55-65[1]. (T. 185).

Generally speaking, Dr. Kralik's report substantially supports the ALJ's finding that Plaintiff retained the mental capacity to perform sustained work activity. Despite some difficulties, Dr. Kralik offered numerous reasons to believe Plaintiff retained the ability to function in a work place with some limitations, and those restrictions were recognized and adopted by the ALJ.

Plaintiff underwent a second mental health evaluation by Patricia Walz, Ph.D., on November 20, 2007. Dr. Walz diagnosed the Plaintiff with Major Depression, single episode, moderate to severe without psychosis, probable learning disorder and a GAF of 45-50[2]. (T. 210). The Plaintiff reported to Dr. Walz that she had never hospitalized or treated for any psychiatric disorder.  *See Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007) (holding that lack of formal

---

[1]A GAF score of 51 to 60 indicates "moderate symptoms ... OR moderate difficulty in social, occupational, or school functioning." DSM-IV-TR at 34.

[2]A GAF of 41 to 50 indicates "Serious symptoms ... OR any serious impairment in social, occupational, or school functioning (e .g., few friends, unable to keep a job)." Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) 34 (4th ed.2000).

treatment by a psychiatrist, psychologist, or other mental health professional is a significant consideration when evaluating Plaintiff's allegations of disability due to a mental impairment).

Dr. Walz noted the Plaintiff's activities of daily living, felt her social skills were adequate, her speech was clear and intelligible but that she did appear to have a learning disorder. She also noted her concentration was significantly impaired as was her capacity to sustain persistence in completing tasks. She also felt that her capacity to complete work-like tasks within an acceptable time frame would be slow. (T. 211).

On November 30, 2007 Dr. Jay Rankin performed a Psychiatric Review Technique and a Mental Residual Functional Capacity Assessment. Dr. Rankin found the Plaintiff to be Moderately Limited or Not Significantly Limited in her Functional Capacity Assessment. He did not find her to be Markedly Limited in any area. (T. 230). Dr. Rankin found that the Plaintiff was able to perform work where interpersonal contact is incidental to work performed, e.g. assembly work; complexity of tasks is learned and performed by rote, few variable, little judgment; supervision required is simple, direct and concrete. (T. 230). Dr. Rankins findings were reviewed by Dr. Jerry Henderson on December 19, 2007 and affirmed. (T. 234).

The court notes, however, that subsequent to all of these mental evaluations the Plaintiff was hired at Exide Technologies. (T. 93, 17). The Plaintiff testified that she never missed any days at work and was paid at a rate of $16.46/hour (T. 18) but that she lost that job because the company required her to rotate and do different jobs and she could only do one. (T. 17). . *See Goff v. Barnhart,* 421 F.3d 785, 793 (8th Cir.2005) (holding that working after the onset of an impairment is some evidence of an ability to work).

The ALJ adopted the findings of Dr. Rankin that the Plaintiff was able to perform work

where interpersonal contact is incidental to work performed

## C.  Subjective Complaints of Pain:

The Plaintiff made numerous complaints of subjective pain. An ALJ may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).  The ALJ is required to take into account the following factors in evaluating the credibility of a claimant's subjective complaints:  (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions. *See id.*  The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints. *Masterson v. Barnhart,* 363 F.3d 731, 738 (8th Cir.2004). However, the ALJ need not explicitly discuss each *Polaski* factor. *Strongson v. Barnhart,* 361 F.3d 1066, 1072 (8th Cir.2004). The ALJ only need acknowledge and consider those factors before discounting a claimant's subjective complaints. *Id.*  In the present case, the ALJ failed to acknowledge or discuss the factors in his credibility assessment of plaintiff.

**(1) the claimant's daily activities;**

On the Plaintiff Functional Report dated July 26, 2007 the Plaintiff indicated that she had no difficulties with personal care (T. 128), that she was able to prepare her own meals, make her bed and do laundry (T. 129), drive a car, shop, handle money (T. 130) and that she goes to church every Sunday (T. 131).  Such activities are inconsistent with disabling pain. *See Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996) (ability to care for one child, occasionally drive, and sometimes go to the store); *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996) (ability to visit neighbors,

cook, do laundry, and attend church); *Novotny v. Chater*, 72 F.3d at 671 (ability to carry out garbage, carry grocery bags, and drive); *Johnston v. Shalala*, 42 F.3d 448, 451 (8th Cir. 1994) (claimant's ability to read, watch television, and drive indicated his pain did not interfere with his ability to concentrate); *Woolf v. Shalala*, 3 F.3d 1210, 1213-1214 (8th Cir. 1993) (ability to live alone, drive, grocery shop, and perform housework with some help from a neighbor). Moreover, "acts such as cooking, vacuuming, washing dishes, doing laundry, shopping, driving, and walking, are inconsistent with subjective complaints of disabling pain." *Medhaug v. Astrue*, 578 F.3d 805. Cf. Reed v. Barnhart, 399 F.3d 917, 923-24 (8th Cir.2005).

Plaintiff worked from July 28, 2008 through January 15, 2009, as an electrical assembler, during the period of time she alleges disability (Tr. 17). Plaintiff reported that she did not ever miss a day of work (Tr. 17). Plaintiff explained that, unlike many companies with assembly jobs, Exide required employees to rotate and to perform several different jobs within the assembly plant, rather than just one (Tr. 17). Plaintiff testified that she successfully performed the job of cell wrapping as she described it, but was unable to successfully perform all the other rotation jobs Exide required of their employees (Tr. 17, 20).

The ALJ noted Plaintiff's full-time work during the relevant period (Tr. 41). The ALJ may discount subjective complaints if inconsistencies are apparent in the evidence as a whole. *Black v. Apfel*, 143 F.3d 383. 386 (8th Cir. 1998). In *Johnson v. Apfel*, 240 F.3d 1145, 1148-49 (8th Cir.2001), the court stated "[a]cts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility."

It is clear that the Plaintiff retained the RFC to engage in full time employment. *See Goff v. Barnhart,* 421 F.3d 785, 793 (8th Cir.2005) (holding that working after the onset of an

impairment is some evidence of an ability to work).

### (2) the duration, frequency, and intensity of the pain;

The Plaintiff described her pain as a "deep throbing (sic) pain like a toothache when it hits a nerve", that it would run from the elbow in her right arm to the middle of her neck. Sometimes her hand would go numb and that the pain was daily. (T. 125).

The Plaintiff was seen by Dr. Russell from November 3, 2006 to May 2007 and never complained of pain related to her arthritic condition. (T. 166-171). When the Plaintiff was seen be Dr. Kralik on August 16, 2007 Dr. Kralik noted that "no significant manifestations of pain were overly evident." (T. 182). As noted above the Plaintiff was able to return to full time manual labor in July 2008.

### (3) dosage, effectiveness, and side effects of medication;

When the Plaintiff first received treatment from Dr. Russell on May 31, 2007 Dr. Russell did not prescribe any medication for pain but only prescribed anti-depressant and anxiety medication. (T. 166). When the Plaintiff saw Dr. Kralik in August 2007 she stated that she was on Cymbalta and over the counter pain medication. (T. 181). In November 2007 the Plaintiff admitted taking no narcotics for pain (Tr. 209). When the Plaintiff saw Dr. Hoang in October 2007 she stated she was on Cymbalta and Lotrel for high blood pressure and did not even make any reference to over the counter pain medication  (T. 188). The primary use of over the counter medication is evidence to support the ALJ determination that the Plaintiff did not suffer disabling pain. *See Riggins v. Apfel*, 177 F.3d 689, 693 (8th Cir.1999).

### (4) precipitating and aggravating factors; and

There are no precipitating or aggravating factors in the record.

  **(5) functional restrictions**

  There were no functional restrictions placed on the Plaintiff by her treating physician and he encouraged her to find other employment after her job at Whirlpool played out. *See Hensley v. Barnhart*, 352 F.3d 353, 357 (8th Cir.2003) (A lack of functional restrictions on the claimant's activities is inconsistent with a disability claim where, as here, the claimant's treating physician is increased physical exercise.)

*See also Moore v. Astrue* 572 F.3d 520, 524 (C.A.8 (Ark.),2009)

  Questions of credibility are the province of the ALJ as trier of fact in the first instance. *Chamberlain v. Shalala*, 47 F.3d 1489, 1494 (8th Cir. 1995). The ALJ need not discuss every Polaski factor if he discredits Plaintiff's credibility and gives good reason for doing so. If the ALJ gives good reasons for finding Plaintiff not credible, then the court should defer to his judgment even when every factor is not explicitly discussed. *Dunahoo v. Apfel*, 241 F.3d 1033, 1037 (8th Cir. 2001). The court finds that the ALJ has given good reasons to discount the credibility of the Plaintiff's alleged disabling pain.

**Vocational Expert Testimony:**

  The Plaintiff contends that the ALJ erred as to the Plaintiff's ability to return to past relevant work. (ECF No. 12, p. 8).

  The ALJ found that "[B]ased on the evidence of the impartial vocational expert, Dave O'Neal, with regard to the claimant's residual functional capacity and the physical and mental demands of the jobs listed above, the undersigned finds that the claimant is capable of performing past relevant work as a poultry worker (DOT 525.687-078), appliance assembler (DOT 827.684-010) and electrical assembler (DOT 729.687-010) as actually

and generally performed." T. 45.

      When evaluating whether a claimant can return to past work, the ALJ:

> must specifically set forth the claimant's limitations, both physical and
> mental, and determine how those limitations affect the claimant's residual
> functional capacity. The ALJ must also make explicit findings regarding
> the actual physical and mental demands of the claimant's past work. Then,
> the ALJ should compare the claimant's residual functional capacity with
> the actual demands of the past work to determine whether the claimant is
> capable of performing the relevant tasks. A conclusory determination that
> a claimant can perform past work without these findings, does not
> constitute substantial evidence that the claimant is able to return to his past
> work.

*Groeper*, 932 F.2d at 1238-39 (citations omitted). *Ingram v. Chater* 107 F.3d 598, 604 (C.A.8 (Ark.),1997)

      The VE testified that he had reviewed the Plaintiff's past relevant work and that there was sufficient objective evidence for him to formulate an opinion about her PRW. (T. 29) The ALJ asked the VE specifically about the Plaintiff's past relevant work in the poultry industry, for Whirlpool and her work on an assembly line after she had filed for disability. (T. 30). The VE testified as to the DOT classification for each job and that the jobs were at the light or sedentary level. (Id.).

      The ALJ properly formulated a hypothetical question setting forth all the impairments supported by substantial evidence in the record, which were accepted as true by the ALJ. *Guilliams v. Barnhart*, 393 F.3d 798, 804 (8th Cir. 2005). Moreover, the ALJ may properly exclude any alleged limitation or impairments that he rejected as untrue or unsubstantiated. *Hunt v. Massanari, 250* F.3d 622, 625 (8th Cir. 2001). The ALJ then posed a hypothetical question to the VE based upon the ALJ's determination of the Plaintiff's RFC. The VE testified that the

Plaintiff would be able to perform any of her past three jobs as poultry worker, appliance assembler, and electrical assembler. (T. 31).

It does not appear to the court that the ALJ committed reversible error in determining that the Plaintiff could return to her past relevant work.

**V.    Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision, and thus the decision should be affirmed. The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

Dated this 6th day of June 2011.

/s/ J. Marschewski
HONORABLE JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE